IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAIL SIKORA, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:24-cv-290 |
| | ) |
| v. | ) Magistrate Judge Maureen P. Kelly |
| | ) |
| FRANK BISIGNANO,[1] | ) Re: ECF Nos. 10 and 12 |
| *Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

Pending before the Court are Plaintiff's Motion for Summary Judgment and Brief in Support thereof, ECF Nos. 10 and 11, and Defendant's Motion for Summary Judgment and Brief in Support thereof, ECF Nos. 12 and 13. Plaintiff has also filed a Reply Brief. ECF No. 15.[2]

Upon consideration of the parties' cross-motions for summary judgment, and after reviewing the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for supplemental security income ("SSI") under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., the Court finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Biestek v. Berryhill, 587 U.S. 97, 102-03 (2019); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs, 48 F.3d 114, 117 (3d Cir. 1995) (citing Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

---

[1] Frank Bisignano is substituted as the defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed. ECF No. 7.

1988)). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

**I.     BACKGROUND**

Plaintiff Gail Sikora ("Plaintiff") protectively filed a claim for SSI effective November 3, 2020, claiming that she became disabled on March 1, 2016. AR at 25, 488-94.[3] After being denied initially on February 25, 2021, and upon reconsideration on November 23, 2021, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on June 15, 2023. AR at 25, 320-27, 334-43, 344, 100-167. At the June 15 hearing, in addition to taking the testimony of Plaintiff and a vocational expert, the ALJ granted Plaintiff's request to order both a medical and a psychological consultative examination. AR at 162-63. After these examinations, a supplemental hearing was held on November 17, 2023. AR at 58-99. In a thorough decision dated December 18, 2023, the ALJ denied Plaintiff's request for benefits, finding that she was able to perform jobs that exist in significant numbers in the national economy. AR at 25-50. On October 7, 2024, the Appeals Council declined to review the decision. AR at 1-3. Plaintiff filed an appeal with this Court, and the parties have filed cross-motions for summary judgment.

On appeal, Plaintiff argues that the ALJ failed to properly consider whether her case met the requirements for a listed impairment, that the ALJ failed to adequately develop the record and abused her discretion in failing to order an additional consultative examination or submit the case to a medical expert, and that she improperly applied the age criteria in the medical-vocational guidelines. As discussed herein, the Court disagrees and finds that substantial

---

[3]     The Court will refer to the Administrative Record as "AR."

evidence supports the ALJ's decision that Plaintiff is not disabled. Indeed, the ALJ's decision in this matter was uniquely thorough and well-reasoned and needs little more support from this Court.

## II.    STANDARD OF REVIEW

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence); Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001). If the district court finds this to be so, it must uphold the Commissioner's final decision. See Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process to guide ALJs in determining whether a claimant is under a disability as defined by the Social Security Act. See 20 C.F.R. § 416.920. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. If he or she is not engaging in such activity, at Step Two, the ALJ determines whether the claimant is suffering from one or more severe impairments. If so, the ALJ proceeds to Step Three to determine whether the claimant's impairments meet or equal the criteria for a listed impairment. If a claimant satisfies a listing, a finding of disability is automatically directed. If the claimant does not satisfy a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"), which is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. See Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001); 20 C.F.R. § 416.945(a)(1). At Step Four, it is the claimant's burden to demonstrate an inability to perform his or her past relevant work. If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to Step Five. At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability.

### III. DISCUSSION

Here, the ALJ determined that Plaintiff was not disabled after applying the five-step process. Specifically, she found that although Plaintiff suffered from several severe impairments, none met or equaled a Listing, including Listings 12.04, 12.06, and 12.15. AR at 31-33. After formulating Plaintiff's RFC, the ALJ found that Plaintiff was not disabled because she was capable of performing other work in the national economy. AR at 48-49. As noted above, Plaintiff raises several challenges to these findings.

#### A. Whether Plaintiff's Mental Impairments Met a Listing

Plaintiff first argues that the ALJ inappropriately "impos[ed] requirements beyond what is written in the regulations" in finding that her mental severe impairments did not meet a Listing at Step Three of the sequential process. ECF No. 11 at 9. She further argues that ample evidence existed in her file that would demonstrate that she met Listings 12.04, 12.06, and 12.15. Id. at 14-16. For the reasons that follow, the Court disagrees.

As noted above, at Step Three an ALJ must determine whether a claimant's impairments meet or equal the criteria for a listed impairment as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. To meet a Listing, a claimant must "present medical findings equal in severity to *all* the criteria of a listed impairment." Degenaro-Huber v. Comm'r of Soc. Sec., 533 F. App'x 73, 75 (3d Cir. 2013) (quoting Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original)).

The Listings relevant here – 12.04, 12.06, and 12.15 – all pertain to mental disorders, specifically depressive/bipolar and related disorders, anxiety and obsessive-compulsive disorders, and trauma and stressor-related disorders. Each requires the claimant to satisfy either (1) both the criteria in paragraph A and in paragraph B of the Listing *or* (2) the criteria in paragraph C of the Listing. The language setting forth the paragraph C criteria is identical for these three Listings:

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Part 404, Subpart P, App'x 1, 12.04C, 12.06C, 12.15C. Accordingly, to meet the paragraph C criteria, a claimant's condition must satisfy both part C.1 and part C.2. Here, the ALJ found that Plaintiff's conditions satisfied neither. AR at 32-33.[4]

---

[4] Plaintiff does not allege that she meets the paragraph A and B criteria for these Listings.

While Plaintiff argues that the ALJ was wrong on both counts, the primary issue is whether there was sufficient evidence of marginal adjustment pursuant to part C.2.[5]  The regulations explain:

> "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. Part 404, Subpart P, App'x 1, 12.00G.2.c.  Examples of this type of marginal adjustment include an inability to function outside of the home or a more restrictive setting without substantial psychosocial supports.  See id.  Such supports include

> "the help of family members who aid a claimant in his or her basic functioning and daily activities, participation in programs that provide instruction in entry-level work skills and daily living, the receipt of 'comprehensive "24/7 wrap-around" mental health services,' residence in a hospital or institution that provides 24-hour care, and receipt of 'assistance from a crisis response team, social workers, or community mental health workers' who help the claimant with his or her physical needs."

Zook v. Comm'r of Soc. Sec., No. Civ. 23-1990, 2025 WL 564204, at *1 n.1 (W.D. Pa. Feb. 20, 2025) (quoting Gibson v. Saul, No. 20-145, 2021 WL 371577, at *5 (D. Conn. Feb. 3, 2021) (in turn quoting 20 C.F.R. Part 404, Subpart P, App'x. 1, 12.00D.1.)).  Further, "[t]he regulations also recognize that a claimant can meet [the Paragraph C Criteria] if he [or she] lives alone and does not receive psychosocial supports but has instead 'created a highly structured environment by eliminating all but minimally necessary contact with the world outside [his or her] living space.'"  Id. (quoting Gibson, 2021 WL 371577, at *5).

---

[5]     Because, as discussed herein, the Court finds that substantial evidence supports the ALJ's determination that there was a lack of evidence of marginal adjustment under part C.2, it need not consider whether the ALJ's decision that there was also insufficient evidence to satisfy part C.1 was adequately supported.

As the ALJ thoroughly discussed, the evidence here demonstrates nothing of the sort. The ALJ explained this by citing to largely normal mental status examinations that indicated Plaintiff was doing well, was independent with activities of daily living, and was concerned largely with situational stressors. AR at 32. For example, the ALJ referenced the July 13, 2023 consultative examination where Plaintiff indicated that she did not need help at home, drives, cooks, does laundry, and shops twice a week. AR at 32, 1611-12. The ALJ further discussed Plaintiff's relatively conservative treatment history, her activities of daily living, and the fact that she does not have the regular assistance of a blended case manager or case worker. Id. at 32-33. Moreover, the ALJ found partially persuasive the findings of the state agency psychologists, both of whom opined that the evidence did not establish the presence of the paragraph C criteria. AR at 41-42, 46, 256, 280. This constitutes more than substantial evidence in support of her finding that Plaintiff did not satisfy the part C.2 criteria.[6]

Plaintiff suggests that treatment records from the Billings Clinic, generated in 2017 while she was living in Montana, AR at 678-748, provide the necessary evidence of her marginal adjustment. ECF No. 11 at 14-15.[7] However, these records still do not demonstrate the type of extensive and comprehensive psychosocial supports or high degree of structure needed to satisfy

---

[6] Plaintiff misleadingly implies that such an ability to independently perform daily tasks is insufficient to support the ALJ's findings because it sheds no light on her ability to adjust to the requirements of competitive employment. ECF No. 11 at 13. In support of this proposition, she cites to Social Security Ruling (S.S.R.) 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996), and S.S.R. 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017), as well as cases such as Jesurum and Fargnoli. ECF No. 11 at 13. However, these rulings and cases indicate merely that sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity. See, e.g., Fargnoli, 247 F.3d at 40 n.5 (citing Jesurum, 48 F.3d at 119). The determination in regard to the part C.2 criteria is not whether the claimant is able to engage in sustained gainful activity, but whether the evidence shows that she has minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life.

[7] As Plaintiff acknowledges, the ALJ found these records to be cumulative and of little relevance. AR at 148.

the part C.2 criteria. Moreover, the records were from approximately three years before the application date and were considered as part of a previous application for benefits made by Plaintiff.[8]

Although the ALJ may consider evidence introduced in a prior claim before the alleged onset date, "the ALJ is not obligated find evidence prior to the onset date to be relevant or probative." McKean v. Colvin, 150 F. Supp. 3d 406, 414 (M.D. Pa. 2015) (citing Giese v. Comm'r of Soc. Sec., 251 F. App'x 799, 804 (3d Cir. 2007)). Generally, evidence from outside the relevant time period is probative only so far as it pertains to a claimant's condition during the relevant period. See Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 197 (3d Cir. 2007); Hill v. Colvin, No. 14-922, 2015 WL 5709028, at *3 (W.D. Pa. Sept. 28, 2015). The ALJ here found this dated evidence to be, at best, cumulative of the other evidence that failed to demonstrate satisfaction of the paragraph C criteria. The Court finds no fault in such a determination.

In sum, the record contains more than sufficient evidence to support the ALJ's finding that Plaintiff's mental impairments do not satisfy the requirements of part C.2. See Hirst v. Kijakazi, No. 20-1756, 2021 WL 5989111, at *4 (W.D. Pa. Dec. 17, 2021) (stating that "a claimant who functions mostly independently, travels independently, shops alone, goes online, manages money, and is observed to have goal-directed thoughts, typically cannot meet this standard"). To the extent Plaintiff is asking the Court to re-weigh the evidence so as to come to its own conclusion, it declines to do so, because if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence nor reverse merely because it would have decided the claim differently. See Hartranft v. Apfel,

---

[8] Although Plaintiff asserts an onset date of March 1, 2016, a claimant's eligibility for SSI benefits does not begin until he or she has filed an application. 20 C.F.R. §§ 416.202(g), 305(a); see also Dunson v. Comm'r of Soc. Sec., 615 F. App'x 65, 67 n.1 (3d Cir. 2015); Heather M. v. Dudek, No. CV 23-2239, 2025 WL 834750, at *1 n.3 (E.D. Pa. Mar. 17, 2025).

181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986); Berry, 738 F. Supp. at 944 (citing Cotter, 642 F.2d at 705).

The Court therefore finds that substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet the requirement of any Listing.

### B. Whether the ALJ Adequately Developed the Record

Plaintiff next asserts that the ALJ did not satisfy her duty to develop the administrative record because she declined to order additional consultative examinations and/or a medical expert. Given the significant discretion afforded to ALJs in making such decisions, and in light of the facts demonstrating that the ALJ was more than accommodating to Plaintiff's requests, the Court finds no merit in this argument.

Plaintiff is correct, of course, that an ALJ has a duty to develop a full and fair record in a social security case. See Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995); Carmichael v. Barnhart, 104 F. App'x 803, 805 (3d Cir. 2004); 20 C.F.R. § 416.912(b)(1). It does, however, remain Plaintiff's burden to supply evidence in support of her claim. See Ventura, 55 F.3d at 902; Money v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hess v. Sec'y of Health, Educ., and Welfare, 497 F.2d 837, 840 (3d Cir. 1974). What the ALJ is required to do is "ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled." Money, 91 F. App'x at 215. Under the circumstances, it is not clear what else the ALJ could have done to help Plaintiff, who was represented throughout the administrative proceedings, obtain additional relevant evidence.

Indeed, the record paints the picture of a patient ALJ doing her best to develop the record despite constant demands and little actual help from Plaintiff or her counsel. At the first

9

administrative hearing, Plaintiff's counsel requested that the ALJ order additional consultative examinations or secure the assistance of a medical expert, in part to address the applicability of the paragraph C criteria. AR at 109. The ALJ asked Plaintiff's counsel if he had requested opinion evidence from Plaintiff's treating providers that would address these factors. AR at 113. Counsel replied that he had not because treating physicians often do not want to provide such opinions. Id. At the conclusion of the particularly lengthy hearing, the ALJ denied the request for a medical expert but granted Plaintiff's request for additional consultative examinations. AR at 162-63.

Two consultative examinations, one mental and one physical, were conducted in July of 2023. AR at 1610-54. Afterward, in November of 2023, the ALJ conducted a second administrative hearing to account for this new evidence. At the second hearing, Plaintiff's counsel requested that the ALJ order yet another consultative examination, a medical expert, or medical interrogatories to address the applicability of the paragraph C criteria, which the ALJ declined. AR at 74-77. She did, however, again provide Plaintiff with the opportunity to present opinion evidence as to whether she demonstrated marginal ability to adjust. AR at 76. Plaintiff's counsel responded that he did not believe such evidence would be fairly considered by the ALJ. Id.

Therefore, the ALJ *did* order two consultative examinations upon Plaintiff's request and consistently offered Plaintiff the opportunity to submit relevant expert evidence of her own. The ALJ also accepted evidence not timely submitted by Plaintiff, AR at 26, and conducted two very thorough hearings. It was only during the final hearing that the ALJ declined to order any additional consultative examinations or medical experts. She explained that there was little more than Plaintiff's hope that such evidence would prove valuable and that the record already

contained ample evidence to reach a decision. Id. She also reiterated that Plaintiff's counsel had been given several opportunities to submit a medical source statement or additional records and evaluations but had not done so. Id.

Plaintiff believes that this decision prevented the full development of the record. However, while an ALJ *may* order a consultative examination to resolve an inconsistency or if the record is insufficient to render a decision, he or she is generally not required to do so. See 20 C.F.R. §§ 419.919a, 416.920b; Thompson v. Halter, 45 F. App'x 146, 149 (3d Cir. 2002). Generally, an ALJ is authorized to obtain a consultative examination "*if* the information needed to make a disability determination, 'such as clinical findings, laboratory tests, a diagnosis or a prognosis' cannot be obtained from the claimant's medical sources." Tuulaupua v. Colvin, Civ. No. 14-1121, 2015 WL 5769984, at *6 (W.D. Pa. Sept. 30, 2015) (emphasis in original) (quoting 20 C.F.R. §§ 404.1519a(a) and (b)). Such an examination may be ordered "to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on [the claimant's] claim." 20 C.F.R. § 416.919a(b). The decision whether to order such an examination is within the sound discretion of the ALJ. See Thompson, 45 F. App'x at 149. This decision "should be firmly rooted in an assessment of the evidence as a whole." Woodman v. Berryhill, No. 3:17-cv-151, 2018 WL 1056401, at *5 (M.D. Pa. Jan. 30, 2018).

Likewise, "Social Security regulations permit – but do not require – an ALJ to ask for and consider opinions from medical experts on the nature and severity of a claimant's impairment(s), and whether they equal the requirements of a listed impairment." Hardee v. Comm'r of Soc. Sec., 188 F. App'x 127, 129 (3d Cir. 2006) (internal citations omitted). An ALJ

similarly has broad discretion in determining whether to consult with a medical expert.[9]  See id.  See generally 20 C.F.R. § 416.929(b).

Given the significant discretion afforded to ALJs in determining whether to order a consultative examination or obtain the services of a medical expert, the facts here come nowhere close to establishing any abuse of such discretion.  The record in this case was already extensive and certainly contained sufficient evidence for the ALJ to render a decision.  Further, as discussed, the ALJ did, in fact, order two consultative examinations after the first administrative hearing at Plaintiff's request; she only refused when Plaintiff continued to ask even after those examinations had been conducted.  The ALJ was lenient in admitting evidence and provided Plaintiff with two lengthy administrative hearings.

The ALJ also repeatedly provided Plaintiff with the opportunity to present any evidence she wished to, opinion or otherwise, that might relate to the paragraph C criteria.  Plaintiff's counsel's responses as to why he declined to do so make little sense.  First, contrary to his apparent experience, opinions from treating physicians are common in social security cases, and the SSA regulations have always assumed that such opinions would regularly be part of the administrative record.  Moreover, counsel's assumption that the ALJ would not treat opinion evidence submitted by Plaintiff fairly, despite the fact that the ALJ expressly invited such evidence, is not based on any record evidence.

---

[9]  Despite this discretion, an ALJ is obligated to seek a medical expert's opinion in three instances: (1) when the Appeals Council or a court so orders; (2) to evaluate and interpret background medical test data; and (3) when an ALJ "is considering a finding that the claimant's impairment(s) medically *equals* a medical listing."  Cooper v. Comm'r of Soc. Sec., 563 F. App'x 904, 910 (3d Cir. 2014) (emphasis added).  None of these three situations are in play here; the ALJ was not considering whether any of Plaintiff's mental impairments medically equaled a Listing.

Accordingly, the Court finds that the ALJ acted well within her broad discretion in declining to order additional consultative examinations and/or medical experts. See Twila H. v. Comm'r of Soc. Sec., No. CV 24-586, 2025 WL 875796, at *8 (E.D. Pa. Mar. 19, 2025).

### C. Consideration of Plaintiff's Borderline Age Status

Plaintiff's final argument is that the ALJ committed reversible error by "mechanically" applying the age criteria of the medical-vocational guideline section of the regulations (commonly referred to as the "Grids"), 20 C.F.R., Part 404, Subpart P, Appendix 2, despite Plaintiff's borderline age situation. Plaintiff asserts that since she was within 5 months of turning 55, the ALJ should have considered applying the next higher age category (which begins at age 55) under the Grids. Plaintiff contends that doing so would have resulted in a finding of "disabled" under the Grids based on her limitation to unskilled light work. ECF No. 11 at 19-20. However, contrary to Plaintiff's claims, the ALJ did not "mechanically" apply the Grids but rather thoroughly considered Plaintiff's borderline age status in deciding whether she could perform work sufficient to satisfy Step Five of the sequential process.

The Grids assist ALJs in deciding whether a claimant is disabled by directing a finding of "disabled" or "not disabled" based on the combination of various considerations, including the claimant's physical abilities, age, education, and work experience. Sykes v. Apfel, 228 F.3d 259, 266-67 (3d Cir. 2000) (citing 20 C.F.R., Part 404, Subpart P, App'x 2). However, where a claimant has non-exertional limitations as well as exertional ones, an ALJ cannot rely solely on the Grids to make his or her disability finding. See id. at 267. Additionally, the ALJ "will not apply the age categories mechanically in a borderline situation." 20 C.F.R. § 416.963(b). Rather, if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is]

13

disabled, [the ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." Id. Therefore, in borderline situations, the ALJ "cannot mechanically apply the Grids' age categories, but must 'give full consideration to all relevant facts.'" Lucas v. Barnhart, 184 F. App'x 204, 206 (3d Cir. 2006) (quoting Kane v. Heckler, 776 F.2d 1130, 1133-34 (3d Cir. 1985)).

The ALJ did precisely that here. She did not simply use the age category that applied to Plaintiff but considered at length whether the fact that she was within a "few" months of attaining the next older age category warranted the application of the higher category. AR at 48. She explained that use of the next category was "not supported by the limited adverse impact of all factors on the claimant's ability to adjust to other work." Id. The ALJ considered that Plaintiff did not have a lowered educational level and that her past work as a bartender, stock clerk, and geriatric nurse assistant was not in an isolated industry. Id. She also emphasized that Plaintiff's counsel had been provided with the opportunity to justify the use of the higher age category but failed to do so. Id. Further, the ALJ did not rely directly on the Grids but rather relied on the findings of the vocational expert who had found, based on Plaintiff's RFC, that she could perform the jobs of mail sorter, office helper, and lamination machine operator. Id. at 48-49.

This analysis is precisely what the ALJ was required to do; she was not compelled to automatically apply the next older age category merely because of Plaintiff's arguable borderline age status. The rationale she provided for declining to do so is consistent with reasoning the United States Court of Appeals for the Third Circuit has found adequate in borderline age situations. See Roberts v. Barnhart, 139 F. App'x 418 (3d Cir. 2005) (holding that the ALJ appropriately declined to apply the next age category where the claimant was 5-6 months short of the next relevant birthday and where the ALJ did not merely apply the Grids but consulted a

vocational expert because the claimant could not perform a full range of light work). See also Holland v. Comm'r of Soc. Sec., No. Civ. 10-1019, 2012 WL 11052, at *1 n.1 (W.D. Pa. Jan. 3, 2012).

Therefore, the Court finds that the ALJ properly considered Plaintiff's borderline age status and that substantial evidence supports her decision not to apply the next higher age category.

## IV.     CONCLUSION

Accordingly, for all of the foregoing reasons, the Court finds that the ALJ applied the correct legal standards and that substantial evidence supports her decision. It will therefore affirm.

AND NOW, this 29th day of December 2025, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment, ECF No. 10, is DENIED and that Defendant's Motion for Summary Judgment, ECF No. 12, is GRANTED.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order, he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court.

Respectfully submitted,

s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record via CM/ECF